Hon. Barbara A. DeBuono Formal Opinion Commissioner No. 95-F7 NYS Department of Health Corning Tower Empire State Plaza Albany, N Y 12237 Hon. Richard P. Mills Commissioner NYS Department of Education State Education Building Albany, N Y 12234
Dear Commissioners DeBuono and Mills:
Your counsels have asked us to reconsider a portion of an opinion issued by the Attorney General in 1950 regarding the interpretation of the provisions then contained in Education Law § 6512. In that opinion, the Attorney General concluded that non-licensed hospital interns, who were permitted to practice medicine in a legally incorporated hospital as duly appointed members of the resident staff, could write prescriptions, including prescriptions for controlled substances, but such prescriptions could not be filled anywhere other than at the hospital pharmacy. 1950 Op Atty Gen 164. In reaching this conclusion, the Attorney General stated:
Presumably, the internes [sic] you have in mind are physicians who, although not licensed to practice medicine in this State, are nevertheless permitted to practice medicine in a legally incorporated hospital as duly appointed members of the resident staff, pursuant to Education Law, Section 6512, subd. 1, para. b, which reads in part as follows:
 "1. This article shall not be construed to affect or prevent the following:
 "b. The practice of medicine in a legally incorporated hospital by a physician duly appointed as member of the resident staff . . ."
It seems to me that inasmuch as such a physician's practice is restricted to the hospital in which he is appointed, he may not issue a prescription for any medication, whether narcotic or non-narcotic, to be filled other than at the pharmacy supply of that hospital. In other words, the activities of such a physician with respect to the treatment of patients, etc., including the writing and filling of prescriptions, may not extend beyond the province of the hospital itself if he is to practice medicine to the extent allowed by the statute.[1]
You state that the limitation imposed by this opinion is having an adverse impact upon the practice of medicine in the State. You note that there have been significant changes in the practice of medicine since 1950 and state that many more hospital patients are treated as outpatients today. Under the provisions of our prior opinion, you assert, all prescriptions for outpatients treated in hospitals that do not have their own pharmacies must be written by supervising physicians rather than by interns or residents. You point out that this results in additional expense and burdens for patients, hospitals and their staffs. We note also that the treatment of patients at hospital clinics, which do not have pharmacies, has become common. Finally, you note that you are aware of no statutory limitation or public policy concern that supports conditioning the validity of a prescription upon the location at which it is filled.
The Education Law contains comprehensive provisions governing the practice of medicine in New York State. Section 6521 states:
 The practice of the profession of medicine is defined as diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition.
Licensing requirements are set forth in Education Law § 6524. Applicants must, among other things, fulfill education and experience requirements, pass an examination and be of good moral character. Only a person licensed or otherwise authorized under the Education Law is permitted to practice medicine or use the title "physician". Id., § 6522.
The obvious aim of the licensing requirements is to protect public health by ensuring that only qualified individuals practice medicine. There are specific, limited statutory exemptions to these licensing requirements. Education Law § 6526 provides:
The following persons under the following limitations may practice medicine within the state without a license:
 1. Any physician who is employed as a resident in a public hospital, provided such practice is limited to such hospital and is under the supervision of a licensed physician;
. . .
 7. Any intern who is employed by a hospital and who is a graduate of a medical school in the United States or Canada, provided such practice is limited to such hospital and is under the supervision of a licensed physician.
Regulations promulgated by the Commissioner of Education provide that "public hospital . . . shall be construed to include
 a general hospital as defined by Public Health Law, section 2801(10), a psychiatric center operated by the State Office of Mental Health, a developmental center operated by the State Office of Mental Retardation and Developmental Disabilities, an alcohol treatment center operated by the State Office of Alcoholism and Substance Abuse Services, a nursing home, a facility licensed pursuant to article 31 of the Mental Hygiene Law for the care and treatment of persons with mental illness and approved by the State Office of Mental Health, or an incorporated nonprofit home or institution for the care of the chronically ill approved by the State Department of Health.
8 NYCRR 60.7(a). Those regulations also provide:
 The word resident as used in subdivision (1) of section 6526 of the Education Law shall be construed to include interns, employed in a public hospital, who are graduates of medical schools located outside the United States and Canada and who hold the standard certificate of the Educational Council for Foreign Medical Graduates.
8 NYCRR 60.7(b).
Thus, interns and residents who are not licensed may nonetheless practice medicine provided their practice is limited to the hospital where the intern or resident is employed and is carried on under the supervision of a licensed physician. Because the statutory definition of the practice of medicine includes prescribing, an intern or resident is authorized to write prescriptions, but only in the course of a practice that meets the requirements of the statutory exemption.[2]
A separate article of the Education Law governs the profession of pharmacy, which is defined as "the preparing, compounding, preserving or dispensing of drugs, medicines and therapeutic devices on the basis of prescriptions or other legal authority". Id., § 6801. The Education Law establishes licensing requirements and prohibits the unlicensed practice of pharmacy. Id., §§ 6803, 6805. It also provides:
 No drug for which a prescription is required by the provisions of the Federal Food, Drug and Cosmetic Act or by the commissioner of health shall be distributed or dispensed to any person except upon a prescription written by a person legally authorized to issue such prescription.
Id., § 6810. See also, 8 NYCRR Part 63.
The statute does not require all prescription writers to be licensed physicians.[3] It simply requires that the writer be authorized to issue the prescription. Nothing in the Education Law governing pharmacy or in implementing regulations controls the location of the pharmacy at which prescriptions may be filled based upon the status of the writer. Neither the statutory definition of the practice of medicine nor the statute providing exemptions from the licensing requirements makes reference to the actual filling of a written prescription or imposes any requirements as to the location at which a prescription may be filled. Accordingly, we conclude that prescriptions written by a resident in a public hospital, while practicing in that hospital under the supervision of a licensed physician, may be filled at any licensed pharmacy. Similarly, prescriptions written by an intern, who is employed by a hospital and who is a graduate of a medical school in the United States or Canada, while practicing under the supervision of a licensed physician in that hospital, may be filled at any licensed pharmacy.
Very truly yours,
DENNIS C. VACCO
Attorney General
[1] When this opinion was written, the definition of the practice of medicine contained in the Education Law was slightly different than the current definition. Education Law 6501(4) provided:
The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition.
1950 Op Atty Gen at p 166.
We previously had concluded that, under predecessor provisions of the Public Health Law, an individual who was not licensed to practice medicine could nonetheless practice while actually serving on the resident medical staff of a legally incorporated hospital or as an intern in a State institution. 1925 Op Atty Gen 114. The opinion discussed the history of the exemption, stated that it ought to be narrowly construed, and concluded
 this means, in my opinion, that the moment he steps outside the hospital, or even projects his reputation beyond the hospital limits in a manner "tending to imply or designate him as a practitioner of medicine" (sec. 174), he not having registered in accordance with law, his immunity ceases.
1925 Op Atty Gen 117.
The latter opinion did not expressly address the question whether prescriptions written by an intern or resident could be filled at a pharmacy outside the hospital where the intern or resident practices. It also construed a statute that differs somewhat from the current one, as the 1950 opinion did. Accordingly, the prior opinions do not compel the conclusion that, under current law, prescriptions written by a resident or intern must be filled at the hospital where the resident or intern practices.
[2] We note that the determination regarding what privileges, including prescription writing, will be granted to a postgraduate trainee working in a hospital is within the discretion of that hospital. See, 10 NYCRR 405.4
(f)(2).
[3] We note that practitioners other than physicians are authorized to write prescriptions. See, e.g., Education Law 6902; Op Atty Gen No. 95-F2.